ZAO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

**Office of Emilio Estrada**
**Federal Aviation Administration Headquarter**
**Cubicle inside Room 829**
**800 Independence Ave., S.W.**
**Washington, D.C. 20591**

**APPLICATION AND AFFIDAVIT**
**FOR SEARCH WARRANT**

CASE NUMBER:

(Further described below)

I ___**Bruce A Quintero**_____being duly sworn depose and say:

I am a(n) ___**Special Agent with the United States Department of Transportation-OIG**___ and have reason to believe
(Official Title)
that ☐ on the person of or ☒ on the property or premises known as   (name, description and or location)

**Office of Emilio Estrada, Federal Aviation Administration Headquarter, Cubicle inside Room 829, 800 Independence Ave.,**
**S.W.,Washington, D.C. 20591**, including any locked or padlocked rooms within. (as further described in the affidavit in support
**of the search warrant application which is attached hereto and incorporated fully herein). Including Attachments A**
**and B.**

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person
or property to be searched) **(as further described in the affidavit in support of the search warrant application which is**
**attached hereto and incorporated fully herein). Including Attachments A and B.**

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
**evidence and instrumentalities.**

concerning a violation of Title __**18**__ United States Code, Section(s) **§§ 641, 287, and 1001.** The facts to support a
finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED**
**HEREIN**

Continued on the attached sheet and made a part hereof.    ☒ YES   ☐ NO

**Sheri Schornstein**
**Fraud and Public Corruption**
**(202) 514-6956**

Sworn to before me, and subscribed in my presence

_____
Date

_____
Name and Title of Judicial Officer

Signature of Affiant
**Bruce A. Quintero , Special Agent**
**United States Department of Transportation-OIG**

at Washington, D.C.

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Bruce A. Quintero III, after being duly sworn, do depose and state:

  1.  I am a Special Agent of the United States Department of Transportation, Office of Inspector General (DOT-OIG), assigned to the Office of Investigations, Washington D.C. Field Office. The DOT-OIG has employed me as a Special Agent for 1 ½ years. Since that time, I have received training in general law enforcement and in specialized areas including federal employee misconduct, theft, false statements, and fraud. I am currently assigned to a squad that investigates criminal violations involving DOT monies and employees, theft, and fraud schemes. I have participated in numerous investigations involving the crimes of theft, false statements and fraud schemes.

  2.  The facts and information set forth in this affidavit are based upon my personal knowledge and observations, my review of records and documents obtained during this investigation, information received from other law enforcement officers, and information gained through my training and experience. This affidavit does not set forth all information known to the DOT OIG about this case and is being submitted solely for the purpose of providing sufficient information to establish probable cause for the search of the address identified below.

  3.  This affidavit is being submitted in support of an application for a search warrant for the office of EMILIO ESTRADA, located at 800 Independence Avenue SW, Washington, DC, 20591, as more fully described in Attachment A of this affidavit.

4.      This investigation involves a scheme to commit Time and Attendance Fraud by the creation, and submission of fraudulent military and time and attendance documents resulting in the unauthorized payment of military leave benefits.

5.      Based upon the investigation described below, I submit that the facts set forth in this affidavit establish that there is probable cause to believe that evidence, fruits, and instrumentalities of crime, as described in Attachment B of this affidavit, currently exist at 800 Independence Avenue SW, Washington, DC, 20591and that there is evidence of Time And Attendance Fraud in violation of Title 18, United States Code, Section 641 (Theft of Public Funds) and Title 18, United States Code, Section 287 (False Claims) and Title 18, United States Code, Section 1001 (False Statements).

## I.    **RELEVANT CODE SECTIONS**

**Title 18, United States Code, Section 641** provides in pertinent part that:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted--
> Shall be fined under this title or imprisoned not more than ten years, or both.

**Title 18, United States Code, Section 287** states, in pertinent part:

> Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

**Title 18, United States Code, Section 1001** states in pertinent part that:

> Whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
> falsifies, conceals, or covers up by any trick, scheme, or device a material fact;  makes any materially false, fictitious, or fraudulent statement or representation; or  makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism, imprisoned not more than 8 years, or both.

## II.  FACTUAL BACKGROUND

6.      Civilian employees of the U.S. Federal Government who are also members of the National Guard or Reserves of the US Armed forces are entitled to 15 days of paid military leave per year, pursuant to Title 5, United States Code, Section 6323(a).

7.      An employee's civilian pay remains the same for periods of military leave pursuant to Title 5, United States Code, Section 6323(a), including any premium pay (except Sunday premium pay) which an employee would have received while at work and if not on military leave.

8.    At all times relevant here, the DOT OIG maintains a telephone hotline. The purpose of the hotline is to permit employees and concerned citizens to anonymously report suspected cases of fraud, waste, and abuse. After a call is received on the hotline, it is referred to the appropriate investigative office for review and follow-up.

9.    On or about July 30, 2007, DOT OIG received a complaint via the Telephone Hotline concerning EMILIO ESTRADA, a Federal Aviation Administration (FAA) employee. According to the complaint, Emilio ESTRADA, has been representing himself as a General in the U.S. Air National Guard and has been claiming and using military leave since 1998. However, according to the complaint, EMILIO ESTRADA is not currently a member of the military.

## III. The Investigation

10.    EMILIO ESTRADA started his employment with the FAA in September 1996. ESTRADA, an FAA flight safety inspector, holds a "SECRET" security clearance and is currently a GS-14 pay grade with an annual salary of approximately $106,641.00.

11.    Your affiant has obtained copies of ESTRADA's National Guard Bureau Form 22, Report of Separation and Record of Service. A review of ESTRADA's military service record reveals that ESTRADA separated from the D.C. Air National Guard (DCANG) on December 8, 1991, as an E-6, Technical Sergeant.

12.    A review of FAA time and attendance history reports for ESTRADA reveals that ESTRADA has requested and used military leave beginning in Fiscal Year (FY) 1998 thru FY 2006 on 21 different occasions, for a total of 600.5 hours.

13.    Your affiant reviewed ESTRADA's Official Personnel File (OPF) to determine ESTRADA'S salary during each period of military leave taken in order to assign a dollar value to the military leave used by ESTRADA. The approximate cost to the FAA of the military leave paid to ESTRADA is $24,808.77.

14.    On all 21 occasions that ESTRADA requested and used military leave, he signed and submitted two fraudulent documents; an OPM Request for Leave Form (SF-71) and a Time and Attendance sheet. The submission of the former document resulted in authorization by his superiors for military leave. The submission of the latter document resulted in ESTRADA receiving payment from FAA for the military leave taken.

15.    Between FY 2002 through FY 2007, ESTRADA used military leave a total of 11 times, for 320 hours, at a loss to FAA of $ 15,321.04. Your affiant has reviewed Time and Attendance sheets, Leave Requests, and Request and Authorization for TDY [Temporary Duty], Form DD 1610, submitted by ESTRADA for military leave. The Time and Attendance sheets examined were completed, signed, and submitted to superiors by ESTRADA.

16.    Your Affiant has recovered and reviewed nine different DD Forms 1610, Request and Authorization for TDY, which were submitted by ESTRADA as proof of military duty for periods between FY 2003 and FY 2006. Each DD Form 1610 indicates that ESTRADA was to perform military duty on various dates with the 201st Airlift Squadron, a DCANG unit located at Andrews Air Force Base, Maryland. Investigation reveals that ESTRADA was a member of the 201st Airlift Squadron until he was discharged in 1991.

5

Thereafter, ESTRADA prepared and submitted the fraudulent DD Forms 1610 in order to deceive his FAA supervisors into approving his requests for military leave.

17.     The DD Form 1610 is available on the Internet and can be downloaded and printed by anyone with a computer and Internet access.

18.     A review of all the DD Forms 1610 that were submitted by ESTRADA to FAA supervisors for military leave between FY 2003 and FY 2006 was conducted by DC Air National Guard (DCANG) officials.  DCANG officials found the documents contained fraudulent information, including: unit names, unit phone numbers, false accounting codes, and incorrect commanders' names.

19.     DCANG officials entered the accounting classification codes listed on the DD Forms 1610, submitted by ESTRADA, into military pay and military orders systems and found the codes to be invalid.

20.     DCANG payroll and personnel officers queried multiple military databases with ASTRIDE's name and social security information and found no record of any pay for military duty or any orders for military duty being issued to ASTRIDE for any of the periods ESTRADA'S has used military leave.

21.     In August 2006, ASTRIDE submitted a completed Standard Form 86 (SF-86), Questionnaire for Sensitive Positions, in order to maintain his SECRET security clearance. In section #16, ASTRIDE lists past military service ending in 1990, six years prior to being hired by FAA.  ASTRIDE does not claim any additional military service on this questionnaire that would support his right to receive military leave during ESTRADA's tenure at FAA.

6

22. Since 2001, conducting FAA business from his residence, including but not limited to: preparing time and attendance records, leave requests, and e-mail correspondence. According to FAA, ESTRADA was issued a US Government owned laptop computer that he takes back and forth from work to home which is used in the ordinary course of his employment. Using this computer he is able to access the FAA computer network and access his e-mail and directory work files.

23. Every FAA employee who accesses the FAA computer network is greeted with a banner that states as follows:

> "**WARNING**WARNING**WARNING**
>
> This is a Federal Aviation Administration (FAA) computer system. FAA systems, including all related equipment, networks, and devices (specifically including Internet access) are provided for the processing of official U.S. Government information. Unauthorized access or use of this computer system may subject violators to criminal, civil, and/or administrative action.
>
> All information on this computer system may be intercepted, recorded, read, copied, and disclosed by and to authorized personnel for official purposes, including criminal investigations. Access or use of this computer system by any person, whether authorized of unauthorized, constitutes consent to these terms.
>
> **WARNING**WARNING**WARNING**"

24. After reading this banner, all employees must click on the button continue as an acknowledgment that they have read and understand the warning provided.

7

## IV. **LOCATION OF EVIDENCE, FRUITS, INSTRUMENTALITIES**

25.    Based upon your affiant's training, experience, and the facts described above, it is known that individuals who commit Time And Attendance Fraud often maintain or have in their possession records and other material relating to their activity, which may exist in all forms, such as those on paper or stored in electronic or magnetic format on hard drives, compact disks, zip disks, magnetic tapes or floppy disks.

26.    Based upon your affiant's training and experience, individuals involved in Time And Attendance Fraud maintain at their places of work, records such as (1) time and attendance records; (2) leave requests; (3) physical and electronic messages; (4) business and financial records; (5) telephone records; (6) and correspondence with co-workers which are related to their illegal activities.  It is also known that such individuals use computer hardware, including items such as computer data processing devices, disk drives, video display monitors, disk storage devices, and disk read/write devices.  It is further known that such individuals use computer software, documentation relating to the configuration and operation of the computer hardware, computer passwords, and security devices.

## V. **SEIZURE OF EQUIPMENT AND DATA**

27.    In order to completely and accurately retrieve data maintained in computer hardware or on computer software, to ensure accuracy and completeness of such data, and to prevent the loss of the data either from accidental or programmed destruction, it is often necessary that some computer equipment, peripherals, related instructions in the form of manuals and notes, as well as the software utilized to operate such a computer, be seized and

subsequently processed by a qualified computer specialist in a laboratory setting. (These items are described in more detail in Attachment B). This is true because of the following:

A) Computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits or evidence of criminal activities, and/or (2) the objects may have been used to collect and store information about criminal activities (in the form of electronic data);

B) Computer storage devices (such as hard drives, diskettes, and back-up tapes) can store the equivalent of thousands of pages of information. Computer hardware and computer software may be utilized to store records which include, but are not limited to, those relating to business activities, criminal activities, associate names and addresses, and the identity and location of assets illegally gained through criminal activity. Additionally, a user may try to conceal criminal evidence by storing it in random order with deceptive file names. This may require searching authorities to examine all of the stored data to determine which particular files are evidence, fruits, and/or instrumentalities of a crime. This sorting process can take substantial time, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site;

C) Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires computer experts to specialize in some systems and applications. Therefore, it is difficult to know before a search which expert is qualified to analyze the system and data.

9

D)      Data search protocols are exacting, scientific procedues designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected or encrypted files.   Because electronic evidence is extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled off-site environment is essential to its complete and accurate analysis.

28.      Computer hardware may be described as any and all electronic devices capable of creating, converting, displaying transmitting or analyzing magnetic or electronic impulses or data.   These devices include, but are not limited to, computers, computer peripherals such as printers, scanners, modems, plotters, circuit boards, and other electronic devices;

29.      Computer software may be described as any and all programs or instructions capable of interpretation by a computer and related devices which is stored in the form of magnetic or electronic media.   These items include, but are not limited to: application software, operating systems, programs, compilers, interpreters, and other programming utilized to communicate with computer components; and

30.      Computer instructions which may be described as existing in the form of books, manuals, notes and the like, which include, but are not limited to written or printed material which provide exemplars and instructions regarding the operation of computers, peripherals, and software.

## VI. CONCLUSION

31.        Based upon the facts and circumstances summarized above in this affidavit, there is probable cause to believe that evidence, fruits, and instrumentalities of crime are located at 800 Independence Avenue SW, Washington, DC, 20591, which relate to Time And Attendance Fraud in violation of Title 18, United States Code, Section 641 (Theft of Public Funds) and Title 18, United States Code, Section 287 (False Claims) and Title 18, United States Code, Section 1001 (False Statements).

Therefore, the above-mentioned records, computer hardware, and software constitute evidence of criminal offenses and instrumentalities of these criminal violations.

WHEREFORE, the undersigned respectfully requests that the Court approve the attached search warrant.

_____

Bruce A. Quintero III
Special Agent
US Department of Transportation
Office of Inspector General

Sworn to before me this _____ day of _____ 2007.

_____
United States Magistrate Judge
_____ District of _____

11

## **ATTACHMENT A**

## **DESCRIPTION OF PREMISES TO BE SEARCHED**

The principal office of EMILIO ESTRADA is located within the Federal Aviation Administration  Headquarters at 800 Independence Avenue SW, Washington, DC, 20591. The office of EMILIO ESTRADA is located on the eighth floor and is a single station cubicle within room number 829.  The cubicle is the fourth cubicle, on the right hand side of the hallway.  On the outside of the cubicle is a name plate bearing the name of EMILO ESTRADA.  The cubicle does not have a door and is open to any person having access to room number 829.

**ATTACHMENT B**

**DESCRIPTION OF ITEMS TO BE SEIZED**

Evidence relating to Time And Attendance Fraud in violation of Title 18, United States Code, Section 641 (Theft of Public Funds) and Title 18, United States Code, Section 287 (False Claims) and Title 18, United States Code, Section 1001 (False Statements).

A.  RECORDS

1.  Computer files, including but not limited to software, pictures, and sound recordings, in any storage media or medium. Storage "media" or "medium" includes that which is able to collect, store, maintain, retrieve, conceal, transmit and back-up electronic data such as fixed hard disks, external hard disks, removable hard disks, floppy diskettes, compact disks (CDs), digital video disks (DVDs), zip disks, optical disks, magnetic tapes, electronic notebooks, electronic diaries, printer buffers, smart cards, tapes, optical storage devices, laser disks or other memory storage devices.

2.  Computer log files relating to time and attendance and records of military service.

3.  Indices of occupancy, residency, rental and/or ownership of the premises to be searched, included, but not limited to, utility, land, telephone records, mortgages, deeds and lien records, purchase or lease agreements, canceled mail, canceled envelopes and keys.

5.  Records pertaining to accounts held with ISPs or records pertaining to Internet usage.

6.  Records of personal and business activities relating to the operation and ownership of computer systems, such as telephone records, notes, books, diaries, and reference materials.

B.  HARDWARE

7.  Computer hardware, which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes any data-processing devices (such as central processing units, memory typewriters, Personal Data Assistants (PDAs), and self-contained "laptop" or "notebook" computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy

13

disk drives and diskettes, removable magnetic disk storage drives and disks, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); and related communications devices (such as modems, cables and connections, and RAM or ROM units,); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

C. SOFTWARE

8.  Computer software consisting of digital information which can be interpreted by a computer and any of its related components to direct the way they work; in whatever form it may be found, to include: electronic, magnetic, optical, or other digital form, in addition to printed source code. Software includes, but is not limited to: any programs to run operating systems, control peripheral equipment, applications, utilities, scripts, compilers, interpreters, and communications programs; any programs, whether functional or not, to assist in the defeat of security/protective feature in place to prevent the unauthorized copying, distribution, and/or activation of software; along with any and all programs necessary for the proper functioning of this software.

D.  COMPUTER DOCUMENTATION

9.  Computer-related documentation consisting of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use the computer hardware, software, or other related items.

E.  PASSWORDS AND DATA SECURITY DEVICES

10.  Computer passwords and other data security devices that are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital codes may include programming code that creates "test" keys or "hot" keys, which perform user-defined security-related functions when activated. Data security software or code which might also encrypt, compress, hide or "booby-trap" protected data to make it inaccessible or unreadable as well as reverse the process to restore the data. Computer passwords may be stored in electronic media or written down on ledgers, books, papers, etc.

14

F.    MILITARY RECORDS OF SERVICE

    11.    All documents, files, papers, writings, photos related to military service.